Daniel, J.
 

 The defendants have denied, in their' answers, any knowledge of any trust in the slaves for William McGee, created by Thomas McGee, Sen. either bjf any secret or public agreement with his daughter Elizabeth, or any one else. They furthermore deny any belief that such a trust was ever created or intended. Elizabeth Moore, (formerly McGee,) denies positively, that her father ever requested her, before or after he executed the deed of gift of the said slaves, that she should hold any portion of them in trust for her brother, William McGee. Thomas McGee, the trustee under the deed executed by Elizabeth, denies that he hás one cent for rents and hires, to account to thé administrator of William McGee. He avers that he had advanced about $400 for his, William’s, support, after the date of the deed from his sister to him, in trust; and that he had promised to pay $80 more, the medicine bill in his last illness ; and that he had never received, or was entitled to receive, more than about $50 for rents and hires of the slaves he had charge of for the use of William McGee. Hussy, the defendant in the judgment at law, should regularly have been á party plaintiff in that bill. A bill cannot be brought by one, who indemnifies another, upon an equity of the principal, without making' the principal himself a party. But in looking into the case, we thought the merits so plain in favor of the defendants to the bill, that we concluded to decide the causé, upon
 
 *123
 
 the strength of the answers themselves. As for the equity, which the bill sets up by reason of the purchase of the negroes by or for Moore at the Sheriff’s sale ; there are two answers to it.
 
 First,
 
 the fact is positively denied in the answer.
 
 Secondly,
 
 if it were true, the plaintiff could not be relieved on it. If he had thought proper to have gone into the Court of Equity, in the first instance, to obtain satisfaction out of the negroes as the equitable property of William McGee for life, the life estate been sold, and then, the plaintiff, as the creditor, would have got whatever that would have brought iu the market — the purchaser running the risk of W. McGee’s life. That sale would not have disturbed Moore’s interest in remainder, nor been wrongful to the trustee ; and there would have been no cause of action to any one. But the plaintiff and the Sheriff did not adopt that course, but sold the negroes out and out, as the absolute property of William, liable to execution under the Act of 1812. That made it the duty of the trustee to bring the action at law, in which, as the case turns out, the recovery is in. money. Now, pending that action, William McGee died, and the plaintiff insists, that he ought to have a deduction from the judgment proportional at least to the value of his life estate, at the time of the sale, compared with the value of the remainder. But we think clearly, that he cannot. For, by the plaintiff’s own act, the negroes have been turned into money in the hands of the trustee ; and the only right the plaintiff could elaim therein would be the interest of the fund during William’s life. That, in truth, he has ; for the value of property recovered in detinue does not hear interest, and, therefore, there is not and will not be, when the judgment at law is collected, one cent, as regards the sums recovered for the value of the negroes, in the hands of the trustee, which ought to belong to William McGee, or to the plaintiff as his administrator. Thomas McGee is the trustee as well for Moore as for his brother William; and it is not against conscience that
 
 *124
 
 Moore should claim, upon the falling in of William’s life estate, the capital or full value of the negroes — for he ought to have had them specifically, and may therefore rightfully claim the whole value of them. It is not intimated in the bill, that the verdict, found the value higher than it truly was. It cannot be presumed that it did; for although juries often and properly so find in order to enforce the delivery of the slaves, yet that is not the course, where it is known that the defendant cannot discharge himself by a delivery, as if the negro be dead or is owned by another person. From that circumstance, and the sum found compared with the number of slaves, and the silence of the bill on the point, we must take it, that only the true value was given. Now, it is manifest that there is no reason why Moore should not have that. If he bought at the Sheriff’s sale for-less, it was his good fortune and the plaintiff’s fault; and, as he would have lost the whole of his purchase money, if William McGee’s title proved defective, he may justly claim any advantage from a purchase at less than the real value. It is true, the verdict includes also the hires of the negroes while the suit was pending, and that they do belong to William McGee, as the profits in his time. But that cannot avail the plaintiff upon these pleadings, because the trustee swears, that he was in advauce for William a much larger sum, besides his expenses in this litigation. There is, therefore, nothing in this part of the case on which the plaintiff can have relief.
 

 We are unable to see any ground, for the reversal of the decree ; and it must be affirmed with costs.
 

 Per Curiam.
 

 Ordered to be certified accordingly.